IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MARK A. LIVINGSTON.,

    *Plaintiff,*

v.

KIRSTJEN M. NIELSEN, Secretary, United
States Department of Homeland Security,

    *Defendant.*

Civil No. 1:16-cv-1163

Hon. Liam O'Grady

## MEMORANDUM OPINION

In an Order dated October 23, 2018, the Court granted Defendant's Motion in Limine to Exclude Certain Evidence Relating to Joseph Salvator. *See* Dkt. 129. This memorandum opinion accompanies that Order.

## I. BACKGROUND

Mr. Livingston is a former member of the Transportation Senior Executive Service ("TSES") at the Transportation Security Administration ("TSA"). Mr. Livingston began working at TSA in April 2013 as a K-band Program Manager and was promoted to Acting Deputy Assistant Administrator at the Office of Intelligence and Analysis ("OIA") in August 2013. In December 2013, Mr. Livingston was named Deputy Assistant Administrator ("Deputy AA") of the OIA, subject to a one-year probationary period. As a probationary employee, Mr. Livingston could be removed through a one-step process for "unacceptable performance." In his position as Deputy AA, Mr. Livingston was directly supervised by Mr. Sadler, who served as the Assistant Administrator ("AA") of the OIA at that time.

On October 2, 2014, the Executive Resources Council ("ERC") met to discuss Mr. Livingston's probationary period, which would not end for another two months. The ERC is composed of senior-level TSA employees and its primary role is to evaluate employees' performance, though the ERC can also consider allegations of employee misconduct. At the October 2 meeting, the ERC discussed Mr. Livingston's alleged leadership deficiencies and the results of a morale survey. At the time of the ERC meeting, allegations of misconduct had also been raised against Mr. Livingston including allegations that Mr. Livingston had engaged in: hazing, bullying, inappropriate comments, retaliation, and cronyism in hiring and promotion.[1] The ERC unanimously voted to remove and demote Mr. Livingston during the meeting; Mr. Livingston was demoted to a non-TSES Program Specialist position in the Office of Chief Risk Officer with a decrease in salary. The record contains conflicting evidence as to the basis of that decision, and the parties dispute whether the ERC factored the allegations of misconduct into its decision.

Mr. Livingston has brought several claims of discrimination against TSA for his demotion and his work environment. Relevant to the present motion, Mr. Livingston alleges that he was subject to disparate treatment than other employees in both the way in which he was demoted – through the ERC – and the severity of his demotion. In particular, Mr. Livingston expressed his intent to call Mr. Salvator, a fellow former TSES employee who was also demoted, as a comparator witness to support his disparate treatment claim.

At the time of his demotion, Mr. Salvator was a TSES employee who replaced Mr. Sadler as the AA of the OIA. Mr. Salvator was a "career" TSA employee and had successfully completed his probationary period nine years prior. Mr. Salvator was demoted by the Office of

---

[1] These allegations of misconduct were later investigated and found to be unsubstantiated.

2

Professional Responsibility ("OPR") for misconduct. The OPR, whose membership does not overlap with ERC, is primarily responsible for addressing allegations of misconduct for certain employees, though it can also consider allegations of deficient performance. Mr. Salvator faced misconduct allegations regarding inappropriate relationships, unprofessional conduct, and lack of candor.[2] After an investigation into his misconduct was completed, Mr. Salvator was sent a Notice of Proposed Removal. Mr. Salvator would then have had the opportunity to present counter-evidence to the deciding official, but instead accepted a favorable settlement offer. As part of the settlement offer, Mr. Salvator was demoted to the non-TSES position of Deputy Director of Security Operations but kept the same salary.

Defendant filed a Motion in Limine to exclude evidence regarding Mr. Salvator's demotion at trial, arguing that Mr. Livingston has failed to establish that Mr. Salvator is a valid comparator. The motion was fully briefed, and the Court heard oral argument on October 19, 2018. For the reasons stated below, and for good cause shown, the Court granted Defendant's motion on October 23, 2018.

## II. LEGAL STANDARD

To establish Mr. Salvator as a valid comparator, Plaintiff must show that he and Mr. Salvator "are similar in all relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). This showing requires evidence that the Plaintiff and his purported comparator (1) "dealt with the same supervisor," (2) were "subject to the same standards," and (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). This list is not a "magic formula," and ultimately the valid

---

[2] Mr. Salvator admitted at deposition that most of the misconduct allegations were true.

comparator determination should be based on a flexible, common-sense evaluation of all the relevant factors. *Coleman v. Donahoe*, 667 F.3d 835, 846–47 (7th Cir. 2012). To find that a person is a valid comparator, however, ultimately there must be "enough common features between the individuals to allow [for] a meaningful comparison." *Haywood*, 387 F. App'x at 360 (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)) (alteration in original).

### III. DISCUSSION

The first factor to consider in determining whether Mr. Salvator is a valid comparator is whether he and Mr. Livingston "dealt with the same supervisor." *Id.* at 359. Despite the terminology ascribed to this factor, the relevant inquiry is not whether Mr. Livingston and Mr. Salvator dealt with the same direct supervisor, but rather whether they were treated differently by the same decisionmaker. *Coleman*, 667 F.3d at 848. Here, not only did Mr. Livingston and Mr. Salvator have different direct supervisors, but their adverse employment actions also came from different decisionmakers: Mr. Livingston was demoted by the ERC and Mr. Salvator was demoted by the OPR. Mr. Livingston argues this factor should not affect the valid comparator analysis because the fact that he and Mr. Salvator were demoted by different bodies is an example of how Defendant subjected Mr. Livingston to disparate treatment. However, the differences in Mr. Livingston's and Mr. Salvator's alleged conduct and probationary status (see *infra*) can explain why different bodies made the decisions about each employee. As a result, the fact that Mr. Livingston and Mr. Salvator were demoted by different decision-making bodies is evidence that Mr. Salvator is not a valid comparator.

The second factor to consider in determining whether Mr. Salvator is a valid comparator is whether Mr. Livingston and Mr. Salvator were subject to the same standards. *Haywood*, 387 F.

4

App'x at 359. Mr. Livingston and Mr. Salvator were both members of the TSES, and their job title within TSES differed only in that Mr. Livingston was a Deputy AA while Mr. Salvator was an AA. Given their similar leadership positions, both Mr. Salvator and Mr. Livingston were subject to the same standards of conduct. Importantly, however, Mr. Livingston was in his probationary period while Mr. Salvator was a career employee. As a result, the standards governing demotions of Mr. Livingston were different, and much lower, than the standards governing demotions of Mr. Salvator. As noted by Defendant, many cases have held that a probationary employee is not similarly situated to a non-probationary employee. *See, e.g., Morrall v. Gates*, 370 F. App'x 396, 398 n.1 (4th Cir. 2010); *Yeboah-Kankam v. Prince William Cty. Sch. Bd.*, 2017 WL 6758449, at *9 (E.D. Va. Dec. 29, 2017) (Brinkema, J.); *Linton v. Carter*, 2015 WL 4937447, at *6 (E.D. Va. Aug. 18, 2015) (O'Grady, J.). Hence, Mr. Livingston's status as a probationary employee is a distinguishing factor that could explain TSA's different treatment of Mr. Livingston and Mr. Salvator, undermining Mr. Livingston's claim that Mr. Salvator is a valid comparator.

The third and final factor in determining whether Mr. Salvator is a valid comparator is whether he and Mr. Livingston engaged in the "same conduct" without differentiating or mitigating circumstances that would distinguish either their conduct or their employer's response to it. *Haywood*, 387 F. App'x at 359. Mr. Salvator was demoted for engaging in misconduct. While the parties dispute whether the ERC considered the unsubstantiated allegations of similar misconduct made against Mr. Livingston in making its decision to demote him, it is significant that Mr. Livingston, unlike Mr. Salvator, also faced charges of performance deficiencies. The alleged performance deficiencies of Mr. Livingston could explain both the difference in the

5

decision-making body and the difference in the demotion severity between Mr. Livingston and Mr. Salvator. As a result, this factor also suggests that Mr. Salvator is not a valid comparator.

## IV. CONCLUSION

In sum, there are too many significant differences between Mr. Livingston and Mr. Salvator that could account for the differences in both their demotion procedure and demotion severity for Mr. Salvator to be a valid comparator to Mr. Livingston. For these reasons, and for good cause shown, the Court granted Defendant's Motion to Exclude the evidence surrounding Mr. Salvator's demotion from his TSES position.

October 24, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge